# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SOUL CIRCUS, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 06 C 759 |
| BURGER KING CORPORATION, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Burger King Corporation's ("BK") motion to dismiss. For the reasons stated below, we grant the motion to dismiss in part and deny the motion in part as moot.

## BACKGROUND

Plaintiff Soul Circus, Inc. ("SC") alleges that it is in the business of operating a "touring entertainment enterprise" that operates annually from late January through November. (Compl. Par. 3). According to SC, from 1997 to 2004, SC and BK entered into a series of sponsorship agreements ("Agreements"), under which BK agreed to pay SC a sum of money in exchange for having the exclusive marketing

1

rights at SC events. SC alleges that the agreement entered into in 2003 ("2003 Agreement") and the agreement that the parties were planning to enter into in 2004 ("2004 Agreement") incorporated paragraph 2 of prior agreements, which provided that BK's sponsorship terminated at the final event of the SC season. SC also acknowledges that the parties never signed the 2004 Agreement, but SC contends that the parties acknowledged themselves to be bound by the 2004 Agreement and conducted themselves as if they were bound by the 2004 Agreement.

According to SC, on June 10, 2004, in the middle of SC's 2004 season, a BK representative informed SC that BK was immediately terminating its sponsorship of SC events. SC contends that it had not provided BK with any legal justification for BK's withdrawal as a sponsor. SC also alleges that it was left without any sponsor since it had not been authorized by BK to contact other sponsors prior to the SC 2004 season. SC brought the instant action and includes in its complaint a breach of contract claim (Count I), and an unjust enrichment claim (Count II). BK moves to dismiss the instant action pursuant to Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)"), based upon improper venue and moves to dismiss the breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(6)("Rule 12(b)(6)").

## LEGAL STANDARD

Rule 12(b)(3) provides that a party may move to dismiss an action when the action is not filed in the proper venue. Fed. R. Civ. P. 12(b)(3). A party seeking to invoke a forum selection clause to challenge venue should bring a motion to dismiss pursuant to Rule 12(b)(3). *Muzumdar v. Wellness Intern. Network, Ltd.*, 438 F.3d 759, 760 (7th Cir. 2006).

## DISCUSSION

BK contends that the Agreements contained a forum selection clause that indicated that the state and federal courts in the State of Georgia would have exclusive jurisdiction over any controversies that related to the Agreements.

### I. Express Contract

BK argues that the parties are bound by the express contract memorialized in the Agreements, which contain the forum selection clause. BK states that the original sponsorship agreement indicated that it would continue through November 17, 2002. (Compl. Ex. 1). BK also refers to the 2003 Agreement, which amended the original agreement and provided that the sponsorship agreement would be extended to November 30, 2003. (Compl. Ex. 2). Finally, BK states that in 2004,

3

the parties prepared the 2004 Agreement that amended the 2003 Agreement and provided that the sponsorship would be extended to November 20, 2004. (Compl. Ex. 3). However, the 2004 Agreement specifically states that the "Agreement shall commence to be effective upon *full execution* . . . ." (Compl. Ex. A3, Sec 2A.a)(emphasis added). BK contends that the 2004 Agreement was never signed by the parties and SC alleges itself in the complaint that "[t]he Parties never formally executed the 2004 Agreement . . . ." (Compl. Par. 6). Thus, in June 2004, when BK allegedly refused to continue as SC's sponsor, the 2004 Agreement was not a binding agreement on SC or BK and the forum selection clause in the 2004 Agreement was also not binding on the parties.

As to the effect of the forum selection clause in the 2003 Agreement in this action, SC alleges that the 2003 Agreement terminated with the final event of the 2003 season. (Compl. Par. 8). Exhibit A2 of the complaint indicates that the 2003 Agreement terminated on November 30, 2003. SC alleges that the breach of contractual obligations occurred in June 2004, which was after the 2003 Agreement ceased being in effect and before there was any formal execution of the 2004 Agreement. Since neither the 2003 Agreement nor the 2004 Agreement were binding on the parties at the time of the alleged breach of contract, the forum selection clause in those agreements were not binding on the parties either.

## II. Implied-in-Fact Contract

Although there are not allegations that indicate that the parties entered into an express contract, the parties may still have entered into an implied-in-fact contract that would relate to the proper venue in this case. Illinois law recognizes that parties may enter into an implied-in-fact contract, which is formed "not by express agreement but by a promissory expression which may be inferred from the facts and circumstances which show an intent to be bound." *In re Marriage of Bennett*, 587 N.E.2d 577, 579-80 (Ill. App. Ct. 1992)(quoting *Gary-Wheaton Bank v. Burt*, 433 N.E.2d 315 (Ill. App. Ct. 1982)). An implied-in-fact contract differs from an express contract in that "an express agreement is derived from an actual agreement, either verbal or written, and a contract implied in fact is inferred by consideration of the facts and conduct of the parties." *Id.* at 580.

SC itself, in opposing BK's motion to dismiss for failure to state a breach of contract claim, argues that there was an implied-in-fact contract formed between the parties. SC states in its complaint that although the parties did not enter into the 2004 Agreement, the parties "honored their obligations under it, and in all ways conducted themselves as bound by its terms." (Compl. Par. 6). We agree with SC that such allegations indicate that the parties entered into an implied-in-fact contract.

However, such a conclusion also indicates that the parties impliedly agreed in the implied-in-fact contract to bring all potential litigation concerning sponsorship in courts in Georgia.

SC acknowledges in regard to the 2004 Agreement, which contained the forum selection clause, that the parties "in all ways conducted themselves as bound by its *terms*." (Compl. Par. 6)(emphasis added). SC admits that one such term in the 2004 Agreement, which was incorporated from prior agreements, was the forum selection clause. SC also states in its answer to the instant motion that "should the Court find that the written Contract was not in effect on the Breach Date, then [BK] and [SC] were parties to an implied-in-fact contract *with the same terms*." (Ans. 2)(emphasis added). Thus, SC acknowledges that the implied-in-fact contract that is alleged to have been entered into by the parties incorporated the same terms as the 2004 Agreement, which included the forum selection clause.

SC has not challenged the validity of the forum selection clause. Rather, SC's only argument pertaining to BK's Rule 12(b)(3) motion to dismiss was that the 2004 Agreement was not binding. A forum selection clause in an agreement is generally not deemed to provide the exclusive venue for litigation regarding the agreement if the clause merely indicates that one venue will have jurisdiction over the matter. *Muzumdar*, 438 F.3d at 760. However, if a certain venue "is specified with

mandatory or obligatory language" or there "is some further language indicating the parties' intent to make venue exclusive," the clause is deemed to provide the exclusive venue for litigation concerning the agreement. *Id.* In the instant action, the exhibits to the complaint show that the 2004 Agreement incorporated the forum selection clause from the prior agreements, which stated that jurisdiction rests "solely" with the courts in Georgia. (Ex. A1, 4);(Ex A3, 1). Thus, there is language in the 2004 Agreement that shows that the parties intended that Georgia would be the exclusive venue for litigation concerning BK's sponsorship of SC. Since the parties acknowledge that they impliedly agreed to the terms of the 2004 Agreement, they also impliedly agreed that the exclusive venue for litigation concerning sponsorship would be in Georgia. Therefore, we find that this court is not a proper venue for the instant action.

Rule 12(b)(3) provides that the court may dismiss an action based upon improper venue. Fed. R. Civ. P. 12(b)(3). SC requests that the court transfer the instant action to Georgia rather than dismissing the action. SC provides only one conclusory sentence requesting a transfer and SC has not provided any justification for transferring this action rather than dismissing the action. In support of SC's request for a transfer, SC cites *Faur v. Sirius Intern. Ins. Corp.*, 391 F.Supp.2d 650 (N.D. Ill. 2005). (Ans. 2). However, in *Faur* the defendant moved to dismiss the

action based on improper venue and moved in the alternative to transfer the action pursuant to 28 U.S.C. § 1406(a). 391 F.Supp.2d 653. In the instant action, unlike in *Faur*, BK has moved for a dismissal of the instant action based on improper venue and has not moved in the alternative to transfer the action. Also, SC has not shown that it is in the interests of justice to have this case transferred rather than dismissed under 28 U.S.C. § 1406(a). We also note that if BK had moved to transfer the instant action pursuant to 28 U.S.C. § 1404(a), we necessarily would have to find that this court is a proper venue before we could transfer the action. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)(stating that a transfer can be made by a "federal district court, in which a suit is filed with proper venue"). Therefore, we grant BK's Rule 12(b)(3) motion to dismiss based upon improper venue. To the extent that BK's motion to dismiss is based upon Rule 12(b)(6), we deny the motion as moot.

## CONCLUSION

Based on the foregoing analysis, we grant BK's motion to dismiss to the extent that it based on an improper venue and is brought pursuant to Rule 12(b)(3) and we deny as moot the motion to dismiss to the extent that it is brought pursuant to Rule 12(b)(6).

Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 17, 2006